STATE OF NORTH CAROLINA v. KENNETH JUNIOR FRENCH

No. 501A94

(Filed 8 March 1996)

**1. Evidence and Witnesses § 1731 (NCI4th)— first-degree murder—videotape of crime scene—victims moved to show wounds—admissible**

The trial court did not err in a first-degree murder prosecution in showing a crime scene videotape to the jury where the crime scene was Luigi's restaurant in Fayetteville and the videotape included several segments in which victims were moved from the positions in which they were found to show their wounds. The principles that govern the admissibility of photographs apply to motion pictures; the Evidence Code did not change the rule of *State v. Strickland*, 276 N.C. 253, and it is still valid. The State may introduce photographs although the defendant stipulates the cause of death and a videotape may be played for a jury even if it is gory and gruesome if it is relevant and is not used solely to arouse the passions of the jury.

**Am Jur 2d, Evidence §§ 979, 981-985, 987.**

**2. Criminal Law § 491 (NCI4th)— first-degree murder— shooting spree in restaurant—jury view**

The trial court did not err in a first-degree murder prosecution by granting the State's motion for a view of the restaurant where the murders occurred. Although defendant argued that there was voluminous evidence as to the layout of the premises and that the numerous police officers present to maintain order conveyed the message that Cumberland County wanted the defendant to be convicted, evidence does not have to be excluded because there is other evidence of the matter to be proved and it is no more than speculation as to what the jury believed from seeing forty law enforcement officers at the scene. The trial judge's noted reason for allowing the view (to permit the jurors to have an improved understanding of the space in which the incidents occurred) was valid.

**Am Jur 2d, Trial §§ 258 et seq.**

**3. Evidence and Witnesses § 945 (NCI4th)— murder—testimony of bystanders—reactions of people at the scene—chain of events**

The trial court did not err in a first-degree murder prosecution arising from multiple shootings in a restaurant in admitting the testimony of six witnesses who were present and who testified as to what they observed. Although defendant argues that none of the testimony was relevant and that it was unduly prejudicial, the reactions of people at the scene were so intertwined with the crimes that they formed an integral and natural part of the account of the crimes. The testimony was necessary to complete the story of the crimes for the jury.

**Am Jur 2d, Evidence § 564; Witnesses §§ 1003, 1012, 1014, 1020.**

**4. Evidence and Witnesses § 3127 (NCI4th)— first-degree murder—third-party statement to witness—third party looked down before shot—corroborative**

The trial court did not err in a prosecution which arose from a series of shootings in a restaurant by admitting testimony from Bennie Williams about a statement made by Patrick Kidd where Mr. Kidd testified that he and his father got under the table in their booth when the shooting started; that the gunman almost kneeled to look under their table; that Mr. Kidd looked him in the face and then lowered his head; that he heard a gunshot and felt his father jerk; and that the person who had done the shooting had stuck the gun under the table and pulled the trigger. The testimony of Mr. Williams corroborated Mr. Kidd's testimony and, although Mr. Kidd may not have seen defendant shoot his father, he could conclude that defendant had done so from what he saw and heard at the time.

**Am Jur 2d, Witnesses §§ 1003, 1012, 1014, 1020.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing sentences of life imprisonment entered by Brewer, J., at the 14 February 1994 Special Criminal Session of Superior Court, New Hanover County, upon jury verdicts of first-degree murder. The defendant's motion to bypass the Court of Appeals as to the additional judgments was allowed 14 November 1994. Heard in the Supreme Court 14 September 1995.

**STATE v. FRENCH**

[342 N.C. 863 (1996)]

The defendant was indicted on four counts of first-degree murder, eight counts of assault with a deadly weapon with intent to kill inflicting serious injury, and one count of discharging a firearm into an occupied building. The case was moved from Cumberland County to New Hanover County for trial.

The evidence showed that shortly before 10:00 p.m. on 6 August 1993, the defendant, after drinking heavily and attending a party with friends, drove his pickup truck to Luigi's, a restaurant in Fayetteville. Armed with at least one shotgun and a .22-caliber rifle, the defendant shot at cars in the parking lot and into the building as he made his way inside. Once inside, the defendant shot and killed the owners of the restaurant, Pete and Ethel Parrous, and two customers, Wesley Cover and James Kidd. He wounded at least eight others. Fayetteville police officer William Simons eventually subdued the defendant by shooting him several times.

The defendant testified that he had no recollection of shooting anyone at Luigi's and no explanation for why he had done so.

The jury found the defendant guilty of four charges of first-degree murder, three counts of assault with a deadly weapon with intent to kill inflicting serious injury, four counts of assault with a deadly weapon inflicting serious injury, one count of misdemeanor assault with a deadly weapon, and one count of discharging a firearm into an occupied building. At the sentencing proceeding, the jury could not agree as to whether to impose the death penalty. The defendant was sentenced to four consecutive life sentences on the murder charges and to the presumptive terms for each of the other crimes, to be served consecutively.

The defendant appealed.

*Michael F. Easley, Attorney General, by William B. Crumpler, Assistant Attorney General, for the State.*

*James R. Parish for defendant-appellant.*

WEBB, Justice.

[1] The defendant first assigns error to the showing of a crime scene videotape to the jury. The videotape lasted approximately twenty minutes. The defendant objected to showing the last ninety-three seconds.

Specifically, the defendant objected to the following: (1) a seventeen-second segment that showed someone pulling Wesley Cover onto his side to show the wounds to his shoulder and back of his ear and then rolling him over onto his stomach; (2) a twenty-six-second segment that showed James Kidd in several positions that did not represent the position in which he was found and showed him at one point with his shirt removed to reveal the wounds on his back; (3) a twenty-three-second segment that graphically displayed the destruction of Pete Parrous's face and depicted the body in a position other than that in which he was found; and (4) a twenty-four-second segment that showed someone holding open the wound to the back of Ethel Parrous's ear, as well as a close-up of her face.

The defendant says that he stipulated to the cause of death, and there was plenary evidence as to how these individuals were shot and killed. He says the only effect of the showing of this videotape was to inflame the jury. He contends its showing was more prejudicial than probative, and it should have been excluded pursuant to N.C.G.S. § 8C-1, Rule 403.

The State may introduce photographs into evidence although the defendant stipulates the cause of death. *State v. Pinch*, 306 N.C. 1, 292 S.E.2d 203, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), *overruled on other grounds by State v. Robinson*, 336 N.C. 78, 443 S.E.2d 306 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 650 (1995), *and by State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988). The principles that govern the admissibility of photographs apply to motion pictures as well. *State v. Strickland*, 276 N.C. 253, 258, 173 S.E.2d 129, 132 (1970). *Strickland* was decided before the enactment of the Evidence Code, Chapter 8C of the General Statutes. The Evidence Code did not change the rule of *Strickland* and it is still valid. The videotape was used in this case to illustrate the testimony of an agent of the State Bureau of Investigation as to what he saw when he was at the crime scene, and as substantive evidence to prove premeditation and deliberation. *See State v. Barnes*, 333 N.C. 666, 430 S.E.2d 223, *cert. denied*, —— U.S. ——, 126 L. Ed. 2d 336 (1993). A videotape may be played for a jury even if it is gory and gruesome if it is relevant and is not used solely to arouse the passions of the jury. *State v. Hennis*, 323 N.C. 279, 372 S.E.2d 523 (1988). The videotape was competent evidence to prove the matters for which it was introduced. It was apparently shown only once. We cannot hold the court abused its discretion under Rule 403 in allowing the introduction of this evidence.

This assignment of error is overruled.

**[2]** The defendant next assigns error to the granting of the State's motion for a view of the restaurant. The defendant contends that voluminous evidence was introduced as to the layout of the premises. He says a view of it could not have added anything to the jury's knowledge of the crime scene but would only prejudice the defendant. He also contends that allowing the view was prejudicial error because there were at least forty police officers at the scene to maintain order and to direct traffic. This, says the defendant, gave the jury, which was composed of residents of New Hanover County, the idea that the residents of Cumberland County were anxious for the defendant to be convicted.

N.C.G.S. § 15A-1229 provides that a judge may within his discretion permit a jury view. *State v. Simpson*, 327 N.C. 178, 393 S.E.2d 771 (1990). Judge Brewer noted that his primary reason for allowing the jury view was "to permit the [jurors] to have an improved understanding of the size of, the dimensions of, and the configuration of the various portions of the restaurant so that they would have a better sense of exactly in what type of space these incidents occurred." This is a valid reason for allowing a jury view.

Evidence does not have to be excluded because there is other evidence of the matter to be proved. It is no more than speculation as to what the jury believed from seeing forty law enforcement officers at the scene. We cannot hold the court abused its discretion by allowing the view. *State v. Baldwin*, 330 N.C. 446, 412 S.E.2d 31 (1992).

This assignment of error is overruled.

**[3]** The defendant next assigns error to the admission of testimony of six witnesses who were present during the incident, and who testified to what they observed. The defendant argues that none of the testimony was relevant and that it was unduly prejudicial.

Kerry Wheelehan testified that after she had left the restaurant and before the shooting ended, someone ran to her and shouted, "Where is my baby?" William Wheelehan was allowed to testify that he and his wife went to the cook and "told him with no exaggeration that he had saved our lives by telling us that [the defendant] was coming in the back door." Sgt. Jeffrey Wheeler was permitted to testify that his wife asked him where their baby was and that when he told her the baby was still inside, she became hysterical. Willie McCormick, a cook who was the first person who was shot, testified

that when he regained consciousness, he began praying. Patrick Kidd testified that he was with his father, who was shot, and that his father's last words were, "I love you, Patrick." Bennie Williams, an emergency medical technician who came to the scene after the shooting, was allowed to testify that he found a part of a jaw a few inches from a body.

The testimony of the six witnesses as to the reaction of people at the scene described part of the chain of events surrounding the crimes. The reactions were so intertwined with the crimes that they formed an integral and natural part of the account of the crimes; the testimony was necessary to complete the story of the crimes for the jury. *State v. Agee*, 326 N.C. 542, 391 S.E.2d 171 (1990).

This assignment of error is overruled.

[4] In his final assignment of error, the defendant contends Bennie Williams was allowed to testify to a statement by Patrick Kidd that did not corroborate Mr. Kidd's testimony. Patrick Kidd testified that when the shooting started, he and his father got under the table in the booth in which they were sitting. The following colloquy then occurred:

Q. The gunman got down, so to speak, on his knees to look at you and your father?

A. Almost. Basically, yes.

Q. Sir?

A. Basically in this position.

Q. Is that the point in time you are looking him in the face?

A. Yes.

Q. All right. Now, tell the jury what happened then.

A. Um, I was just staring at him. He was staring at me for a few seconds. And I lowered my head.

Q. And then what happened?

A. Then I heard a gunshot go off.

Q. Sir?

A. I heard a gunshot go off a few seconds later.

Q. Did you feel anything when that gunshot went off?

A. I felt my father jerk forward slightly and I heard some air escape from his lips.

Mr. Kidd then testified that he heard a second shot.

Bennie Williams testified that "[t]he gentleman told me that the person who had done the shooting stuck the gun under the table and pulled the trigger."

The defendant argues that Mr. Kidd testified that he "lowered [his] head" and thus could not have seen the defendant "pull[] the trigger." He says Mr. Williams's testimony was substantial new evidence of a premeditated and deliberate murder presented in the guise of corroborating testimony. He argues that it was prejudicial error to admit it.

The testimony of Mr. Williams as to what Mr. Kidd told him corroborated Mr. Kidd's testimony that the defendant shot his father. *State v. Holden*, 321 N.C. 125, 362 S.E.2d 513 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Although Mr. Kidd may not have seen the defendant shoot his father, he could conclude that the defendant had done so from what he saw and heard at the time. The statement Mr. Williams said Mr. Kidd made to him is consistent with Mr. Kidd's testimony. The two statements were simply two ways of describing one event. Mr. Williams's testimony as to what Mr. Kidd told him was properly admitted as corroborating testimony. *State v. Burton*, 322 N.C. 447, 368 S.E.2d 630 (1988).

This assignment of error is overruled.

NO ERROR.