STATE OF NORTH CAROLINA v. DEDRIC BAYLONE BREWINGTON

No. 179A94

(Filed 13 June 1996)

### 1. Homicide § 352 (NCI4th)— first-degree murder—voluntary manslaughter based on imperfect self-defense—instruction not given

There was no prejudicial error in a first-degree murder prosecution arising from a pawn shop robbery where the trial court denied defendant's request to submit to the jury voluntary manslaughter based on imperfect self-defense as a lesser included offense of the first-degree murder. The jury found defendant guilty of first-degree murder based on felony murder with attempted robbery with a dangerous weapon as the underlying felony. Defendant's own statements contained admissions that he twice entered into an agreement to rob the pawn shop using a firearm if necessary and that during the second visit defendant decided to shoot one pawn shop employee to show that he meant business. The fact that defendant and his accomplice left without taking anything is immaterial. A reasonable possibility does not exist that the jury would have convicted defendant of voluntary manslaughter rather than felony murder.

**Am Jur 2d, Homicide §§ 514, 519, 525, 527, 529, 530; Trial § 1483.**

**Modern status of law regarding cure of error, in instruction as to one offense by conviction of higher or lesser offense. 15 ALR4th 118.**

**Accused's right, in homicide case, to have jury instructed as to both unintentional shooting and self-defense. 15 ALR4th 983.**

### 2. Evidence and Witnesses § 1723 (NCI4th)— first-degree murder—pawn shop robbery—surveillance video—slow motion—admissible

There was no error in a first-degree murder prosecution arising from the attempted robbery of a pawn shop in which defendant claimed imperfect self-defense in the admission of a surveillance videotape which defendant contended was not a fair depiction of the scene because it showed only defendant's actions

and because it was shown in slow motion. The videotape was relevant to a critical issue in the case, the sequence of events which took place at the time of the shooting, and, in light of its probative value, the court did not abuse its discretion in permitting the jury to view the videotape in real time or in slow motion.

**Am Jur 2d, Evidence § 981.**

**Admissibility of visual recording of event or matter giving rise to litigation or prosecution. 41 ALR4th 812.**

3. **Criminal Law § 1262 (NCI4th)— assault—sentencing— mitigating factors—voluntary acknowledgement of wrongdoing**

The trial court did not err when sentencing defendant for assault with a deadly weapon inflicting serious injury and conspiracy to commit robbery with a dangerous weapon by failing to find the statutory mitigating factor that defendant voluntarily acknowledged wrongdoing prior to his arrest where defendant's statement before his arrest contains numerous attempts to deny his culpability. Also, a defendant who tries to minimize his culpability by relying on self-defense has not acknowledged wrongdoing and is not entitled to this mitigating factor.

**Am Jur 2d, Criminal Law §§ 598, 599.**

4. **Criminal Law § 1237 (NCI4th)— assault—sentencing—mitigating factors—aid in apprehending another felon**

The trial court did not err when sentencing defendant for assault with a deadly weapon inflicting serious injury and conspiracy to commit robbery with a dangerous weapon by failing to find the statutory mitigating factor that defendant aided in the apprehension of another felon where defendant agreed to allow officers to listen to and tape record a telephone conversation with his accomplice but would not give officers his accomplice's name, officers confirmed the identity of defendant's accomplice by observing the telephone number as defendant dialed and utilizing a cross-reference index, and defendant ultimately gave the accomplice's name to officers only after the officers had already obtained the telephone number. Defendant's assistance was not instrumental in the apprehension of the accomplice and defendant is not entitled to the benefit of this mitigator.

**Am Jur 2d, Criminal Law §§ 598, 599.**

STATE v. BREWINGTON

[343 N.C. 448 (1996)]

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Weeks, J., at the 15 November 1993 Criminal Session of Superior Court, Cumberland County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments imposed for assault with a deadly weapon inflicting serious injury and conspiracy to commit robbery with a dangerous weapon was allowed 24 May 1995. Heard in the Supreme Court 14 February 1996.

*Michael F. Easley, Attorney General, by John H. Watters, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Sendor, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant was tried capitally on a multi-count indictment charging him with first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, attempted robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon. At the close of the evidence, the trial court quashed the count alleging attempted robbery with a dangerous weapon. The jury returned verdicts finding defendant guilty of first-degree murder under the theory of felony murder, assault with a deadly weapon inflicting serious injury, and conspiracy to commit robbery with a dangerous weapon. Based on the jury's recommendation, defendant was sentenced to life imprisonment for first-degree murder. Defendant was also sentenced to a consecutive sentence of ten years' imprisonment for assault with a deadly weapon inflicting serious injury and to a concurrent sentence of ten years' imprisonment for conspiracy to commit robbery with a dangerous weapon. We find no error.

The State's evidence tended to show that on 30 August 1992, Jimmy Ray Denning and Delmar Moses were working at East Coast Pawn, Inc., located in Cumberland County, North Carolina. For protection the pawn shop was equipped with video surveillance and Denning usually kept a "house" gun under the merchandise counter. The house gun was a .357-caliber revolver. Moses also sometimes carried a .25-caliber weapon.

During the afternoon of 30 August 1992, Moses waited on defendant and another young man, later identified as Dan Lamar Blue, when

they purchased a Nintendo tape. After the men left, Moses mentioned to Denning that he thought the men were going to rob the pawn shop. Later that same afternoon defendant and Blue again entered the pawn shop under the pretense of purchasing another Nintendo tape.

After the men made a tape selection, Denning began writing a sales ticket for the purchase. At this time Moses was standing behind Denning and to his right. While Denning was looking down at the sales ticket, he was shot from the front and fell backward onto the floor. As Denning fell he saw the gun in Moses' hand go off and then heard other shots being fired. Denning did not know who fired the shot that hit him, nor did he know who fired the subsequent shots. The next thing Denning recalled was regaining consciousness. Denning saw Moses lying on the floor. Denning picked up the house gun, which was on the floor next to Moses, put the gun on a chair, and called 911. Moses died as a result of gunshot wounds, and Denning was hospitalized for almost eight weeks.

John B. Sawyer, a deputy sheriff with the Cumberland County Sheriff's Department, testified that at approximately 2:24 p.m. on 30 August 1992, he responded to a call from a trailer at 218 Navajo Street. The trailer was located approximately two-tenths of a mile from the East Coast Pawn shop. Deputy Sawyer observed a "visibly upset" female standing outside the trailer. Deputy Sawyer entered the trailer and found defendant bleeding from the leg. Defendant told Deputy Sawyer that he had been walking in front of East Coast Pawn, that two black teenagers had come out of the store shooting, and that he had been shot. Defendant was taken to the hospital.

James K. Wright, Jr., a deputy sheriff with the Cumberland County Sheriff's Department, testified that at approximately 2:17 p.m. on 30 August 1992, he received a radio call to respond to East Coast Pawn. Deputy Wright arrived at East Coast Pawn at approximately 2:20 p.m. and found two males who appeared to be suffering from gunshot wounds.

Linwood J. Brisbane, a deputy sergeant with the Cumberland County Sheriff's Department, investigated the crime scene at East Coast Pawn. As part of the investigation Sergeant Brisbane dusted areas in the pawn shop for latent fingerprints and lifted a latent palm print from a display case. Mariann Mitchell, a fingerprint identification technician with the Fayetteville Police Department, testified that the latent palm print lifted by Sergeant Brisbane matched defendant's left palm print. Special Agent Ricky L. Navarro of the State Bureau of

Investigation confirmed Mitchell's conclusion that the palm print matched defendant's left palm print.

⋅    On 31 August 1992 Sergeant Don Smith and Lieutenant Neill Monroe of the Cumberland County Sheriff's Department took defendant from the hospital to the Law Enforcement Center. Sergeant Smith, Lieutenant Monroe, and Captain Art Binder conducted a tape-recorded interview in which defendant recounted the shooting. Defendant stated that he and his partner entered the pawn shop with the intent to commit a robbery because defendant "needed some money." Although defendant had a gun, defendant stated that he did not plan to shoot anyone; rather, the plan was to "get the guy to open the cash register," rob the shop, and then leave. The first time defendant and his partner entered the shop, defendant was "shaky" and did not want to go through with the robbery. Defendant bought a Nintendo tape, hoping that the employee behind the counter would have to open the cash register to conduct the sales transaction. When the employee did not open the register, defendant and his partner merely walked out after the purchase. After leaving the shop defendant and his partner discussed an alternative plan for the robbery. The two men agreed to enter the pawn shop a second time under the pretext of purchasing another Nintendo tape. They also agreed that if the employee did not open the cash register this time, defendant would "go ahead and pull the gun out."

Defendant stated that when he and his partner entered the pawn shop the second time, a different employee handled their purchase. Defendant feared that the switch meant that the employees suspected a robbery. Defendant whispered his suspicion to his partner, who encouraged defendant to follow through with the robbery. When the second employee did not open the cash register to conduct the sales transaction, defendant became nervous and fumbled in his pocket for his gun. Defendant stated that he was scared one of the employees might also have a gun and that he might himself be shot, so he decided to "shoot one shot, maybe, you know, in the arm or something," to let the employees know he was "not playing." Defendant then pulled out his gun and fired without aiming. Defendant fired one shot at the man handling the sale and then shot the other employee. The other employee then pulled out a gun and shot defendant in the leg. Defendant and his accomplice immediately ran out of the shop without taking any merchandise. Defendant stated that he did not want to shoot anyone and contended that it was the way "they looked at [him] . . . [,] the way that they jumped," that made him do it.

Captain Binder asked defendant to give him the name of his accomplice. Defendant refused to divulge his accomplice's name, but he did agree to call the man and engage him in a taped telephone conversation. While defendant was dialing the telephone number, Sergeant Smith and Captain Binder observed the number dialed. During the telephone conversation defendant referred to his accomplice as "Lamar." The detectives were able to obtain "Lamar's" address by using a cross-reference index. Apparently, defendant also subsequently gave Captain Binder his accomplice's last name. The detectives went to the address listed in the cross-reference index and located Dan Lamar Blue. After defendant made the telephone call to Blue, officers placed defendant under arrest.

Dr. Thomas Clark, a forensic pathologist in the Office of the Chief Medical Examiner, performed the autopsy on Moses. Dr. Clark testified that Moses died as the result of two gunshot wounds to the chest. Dr. Clark also testified that Moses could have fired a gun immediately after being shot.

[1] Defendant presents three assignments of error. In his first assignment of error, defendant contends that the trial court erred by denying his request to submit voluntary manslaughter, on the basis of imperfect self-defense, to the jury as a lesser-included offense of the first-degree murder.

During the guilt-innocence phase charge conference, defense counsel requested that the trial court instruct the jury on the lesser-included offense of voluntary manslaughter on the theory of imperfect self-defense. The trial court denied this request and instructed the jury that it could find defendant guilty of first-degree murder on the basis of premeditation and deliberation and/or felony murder, guilty of second-degree murder, or not guilty. The jury found defendant guilty of first-degree murder on the theory of felony murder. Defendant contends that the evidence in this case would have supported a verdict of voluntary manslaughter and that the trial court's ruling, therefore, constituted reversible error.

Defendant originally made this argument as to both theories of first-degree murder presented to the jury. However, this Court recently ruled that self-defense, whether perfect or imperfect, is not a defense to felony murder, and perfect self-defense is applicable only to certain underlying felonies. *State v. Richardson*, 341 N.C. 658, 462 S.E.2d 492 (1995). Defendant concedes that his argument as it relates to felony murder is without merit.

Defendant nonetheless contends he is entitled to an instruction on the lesser-included offense of voluntary manslaughter since the jury was also instructed on the charge of first-degree murder under the theory of premeditation and deliberation. Assuming arguendo that defendant was entitled to such an instruction, defendant has not argued, nor can we find, any prejudice to defendant from this omission.

The jury was instructed on first-degree murder based on felony murder, first-degree murder based on premeditation and deliberation, and second-degree murder. The jury found defendant guilty of first-degree murder based on felony murder, but not based on premeditation and deliberation, and rejected second-degree murder. Attempted robbery with a dangerous weapon was the felony underlying this conviction. The evidence presented in this case as to the underlying felony charge was not in conflict and was overwhelming. *See State v. Camacho*, 337 N.C. 224, 446 S.E.2d 8 (1994). Significantly, defendant's own statement to law-enforcement officers contains admissions that he and Blue twice entered into an agreement to rob the pawn shop by using a firearm if necessary to carry out their mission. The plan was to pull the gun if the employee did not open the register to complete the sale of the Nintendo tape. During the second visit to the pawn shop, when the employee did not open the cash register, defendant decided to shoot one shot in Denning's arm to let Denning know defendant meant business. The fact that defendant and Blue left without taking anything is immaterial to the charge of attempted robbery with a dangerous weapon. Under these facts a reasonable possibility does not exist that the jury would have convicted defendant of voluntary manslaughter rather than felony murder had the jury been given the opportunity to consider voluntary manslaughter based on imperfect self-defense as a lesser-included offense of premeditated and deliberate murder. *See* N.C.G.S. § 15A-1443(a) (1988). This assignment of error is overruled.

[2] In his next assignment of error, defendant contends that the trial court erred by overruling his objection to the State's introduction of a surveillance videotape. Defendant contends the videotape was not a fair depiction of the taped scene for two reasons: (i) the videotape showed only defendant's actions during the shooting without also showing Moses' actions; and (ii) the videotape was shown in slow motion, which distorted the actual events. Defendant also contends that admission of the videotape was error because the danger of

unfair prejudice substantially outweighed the probative value of the videotape. *See* N.C.G.S. § 8C-1, Rule 403 (1992).

During the testimony of Denning, the videotape was admitted into evidence without objection. The following exchange occurred at trial:

[PROSECUTOR]: Your Honor, at this time the State would move to introduce into evidence State's exhibit No. 1-A [the surveillance videotape] in lieu of State's exhibit No. 1 previously identified.

[DEFENSE COUNSEL]: No objection.

THE COURT: Without objection, State's exhibit 1-A is admitted in evidence.

[PROSECUTOR]: The other items, Your Honor—

THE COURT: Is it being offered in for general purposes or limited purposes?

[PROSECUTOR]: Your Honor, it is being offered in as substantive evidence.

THE COURT: It comes in without limitation and without objection; is that correct?

[DEFENSE COUNSEL]: Yes, Sir.

THE COURT: Okay.

After this exchange, but before the videotape was shown to the jury, defendant objected to the videotape being played in slow motion.

Because the videotape was admitted as substantive evidence without objection or limitation, defendant's first contention, that the videotape showed only defendant's actions, is deemed to have been waived. *See* N.C. R. App. P. 10(b)(1). However, even assuming that defendant's objection was timely, we find no merit to defendant's assignments of error as to the introduction of the surveillance videotape.

A videotape may be played for a jury if it is relevant and is not used solely to arouse the passions of the jury. *State v. French*, 342 N.C. 863, 467 S.E.2d 412 (1996). The exclusion of photographic evidence under Rule 403 of the North Carolina Rules of Evidence is generally left to the discretion of the trial court. *State v. Hennis*, 323 N.C.

279, 372 S.E.2d 523 (1988). In the instant case the videotape was relevant to a critical issue in this case: the sequence of events which took place at the time of the shooting. In response to defendant's objection to the videotape being shown in slow motion, the trial court stated:

> [T]he bottom line is that it has been placed in issue what the sequence was. And my recollection of the defendant's opening statement was that that was a significant aspect of the opening statement, that the defendant in opening statement put in issue the sequence of events of what caused, may have caused the sequence of events.
>
> Ultimately it is going to be a determination for the jury to make on the question of whether the defendant is guilty of first degree murder on the theory of premeditation and deliberation, whether he is guilty of first degree murder on the theory of felony murder, or whether he is guilty of some lesser included offense, or whether he is not guilty of any offense. And this tape is probative as to those determinations.

In light of the probative value of this videotape, we conclude the trial court did not abuse its discretion in permitting the jury to view the videotape in real time or in slow motion. This assignment of error is overruled.

[3] Finally, defendant contends the trial court erred in sentencing defendant for the charges of assault with a deadly weapon inflicting serious injury and conspiracy to commit robbery with a dangerous weapon by failing to find two statutory mitigators that he alleges were established by "uncontradicted and manifestly credible evidence." Specifically, defendant contends that the court erred in failing to find as statutory mitigating factors that prior to his arrest, defendant voluntarily acknowledged wrongdoing in connection with the offenses pursuant to N.C.G.S. § 15A-1340.4(a)(2)(l)[1] and that he aided in the apprehension of another felon pursuant to N.C.G.S. § 15A-1340.4(a)(2)(h).

Under the Fair Sentencing Act, a trial court must find a statutory mitigating factor if that factor is supported by uncontradicted, substantial, and manifestly credible evidence. *State v. Jones*, 309 N.C. 214, 218-20, 306 S.E.2d 451, 454-56 (1983). In order to show that the

---

1. The Fair Sentencing Act, N.C.G.S. § 15A-1340.1 to -1340.7 (1988), was repealed effective 1 October 1994, when the Structured Sentencing Act became effective for offenses occurring on or after that date.

trial court erred in failing to find a mitigating factor, the defendant has the burden of showing that no other reasonable inferences can be drawn from the evidence. *Id.* at 219-20, 306 S.E.2d at 455. Defendant contends that the uncontroverted evidence in this case, that defendant went with law enforcement officers voluntarily from the hospital to the Law Enforcement Center, that he gave a taped confession to the officers, and that he was arrested after he confessed, supports the statutory mitigating factor that prior to arrest, defendant voluntarily acknowledged wrongdoing. *See* N.C.G.S. § 15A-1340.4(a)(2)(*l*) (1988).

We hold the trial court did not err in failing to find this mitigating factor. Defendant did make a statement prior to his arrest as to the conspiracy to rob the pawn shop and the subsequent shooting of Moses and Denning. However, defendant's statement contains numerous attempts by defendant to deny his culpability as to these crimes. For example, defendant stated that upon entering the pawn shop the first time, he "was kind of shaky" and "[did not] want to do it at all." Defendant stated that after the first failed attempt to rob the pawn shop, he did not want to make a second attempt, he told Blue "this ain't gonna work," and Blue then urged defendant to go ahead with the robbery. All of these statements belie defendant's contention that he acknowledged wrongdoing as to the offense of conspiracy to commit robbery. In fact, defense counsel relied on portions of defendant's statement to argue to the jury that defendant had, in fact, abandoned the conspiracy entirely. This mitigating factor was not supported by uncontradicted, substantial, and manifestly credible evidence.

Likewise, defendant did not acknowledge wrongdoing in connection with the offense of assault with a deadly weapon inflicting serious injury. In defendant's statement to officers concerning the shooting, defendant maintained he was scared that one of the employees might have a gun and that he might be shot; so he decided to "shoot one shot,'. . . in the arm or something," to let the employees know he was "not playing." Defendant pulled out his gun and shot Denning and then Moses. Defendant further maintained that he did not want to shoot anyone and that it was the way "they looked at [him] . . . [,] the way that they jumped," that made him do it.

A defendant who tries to minimize his culpability by relying on self-defense has not acknowledged wrongdoing and is not entitled to the mitigating factor at issue here. *See State v. Clark,* 314 N.C. 638, 336 S.E.2d 83 (1985); *see also State v. Michael,* 311 N.C. 214, 316

S.E.2d 276 (1984) (statement given by the defendant in which he admitted that he had killed the victim but contended that the shooting was accidental did not constitute an admission of wrongdoing). The policy behind this mitigating factor is that defendant showed remorse for his actions. *See State v. Ahearn,* 307 N.C. 584, 300 S.E.2d 689 (1983). Defendant's attempt to shift responsibility as to the assault on Denning contradicts defendant's contention that he acknowledged any wrongdoing. The trial court did not err in failing to find this mitigating factor.

**[4]** Defendant also contends the evidence in this case supports the statutory mitigating factor that defendant aided in the apprehension of another felon. *See* N.C.G.S. § 15A-1340.4(a)(2)(h). Pursuant to a request by police officers, defendant called his accomplice by telephone and engaged him in a mutually inculpatory conversation. Defendant agreed to allow officers to listen to and tape record the conversation. Defendant would not, however, give officers his accomplice's name. Officers confirmed the identity of defendant's accomplice by observing the telephone number as defendant dialed and by then utilizing a cross-reference index. Defendant ultimately gave the accomplice's name to officers, but after the officers had already obtained the phone number. Thus, defendant's assistance was not instrumental in the apprehension of Blue, and defendant is not entitled to the benefit of this statutory mitigator. *See State v. Vanstory,* 84 N.C. App. 535, 353 S.E.2d 236 (when defendant and codefendant talked with a police officer at the same time and both confessed to the crime charged, defendant's testimony was not instrumental in the apprehension of the codefendant, and defendant was not entitled to this statutory mitigator), *disc. rev. denied,* 320 N.C. 176, 358 S.E.2d 67 (1987). This assignment of error is overruled.

NO ERROR.