STATE OF NORTH CAROLINA v. ANDY CECIL SHELTON

No. COA04-33

(Filed 7 December 2004)

## 1. Sexual Offenses— incest—motion to dismiss—no requirement of one count of incest per victim

The trial court did not err by denying defendant's motion to dismiss all but one incest charge per victim, because: (1) N.C.G.S. § 14-178 does not reveal any legislative intent to prohibit prosecuting a defendant for more than one count of incest per victim; and (2) neither statutory provisions nor relevant case law suggest that incest is a continuing offense.

## 2. Criminal Law— guilty plea—no acceptance by court—clerical error

The trial court did not err by allegedly accepting defendant's plea of guilty to two counts of incest but then submitting these same counts to the jury for their determination of his guilt or innocence, and the case is remanded solely for correction of the clerical errors in 02 CRS 1192 and 03 CRS 180 where the box marked "pled guilty" is erroneously checked, because: (1) defendant never asked to execute a plea transcript and never followed up on his initial offer to plead guilty; (2) without engaging in the plea colloquies required by N.C.G.S. §§ 15A-1022 and 1026, the trial court cannot and does not accept an offered plea of guilty; and (3) defendant failed to object to evidence of the charges to which he offered to plead guilty and thus failed to preserve this issue for appellate review.

## 3. Sentencing— mitigating factor—acknowledged wrongdoing prior to arrest

The trial court did not abuse its discretion in a multiple felony incest, double first-degree rape, and triple second-degree rape case by failing to find as a mitigating factor that defendant voluntarily acknowledged wrongdoing prior to arrest and at an early stage of the criminal process, because: (1) defense counsel's statement to the court that defendant "admitted some of this" did not constitute a request for the court to find the statutory mitigating factor at issue; and (2) assuming arguendo that defense counsel's statement at sentencing was such a request, defendant never acknowledged the pain and suffering he caused the victims,

the closest defendant came to admitting any wrongdoing was a grudging acknowledgment that having sex with his daughters had been a mistake, and defendant's statements did not prove by a preponderance of evidence that he acknowledged wrongdoing in connection with the offense.

### 4. Sentencing— restitution—genetic testing—incompetent evidence

The trial court erred in a multiple felony incest, double first-degree rape, and triple second-degree rape case by recommending an amount of restitution to reimburse the $2,250 expense for genetic testing, because: (1) while defendant did not specifically object to the trial court's entry of an award of restitution, this issue is deemed preserved for appellate review under N.C.G.S. § 15A-1446(d)(18); and (2) the record does not include any evidence supporting the prosecutor's statement during sentencing as to the amount charged for the genetic testing.

Appeal by defendant from judgments entered 4 June 2003 by Judge Zoro J. Guice, Jr., in Yancey County Superior Court. Heard in the Court of Appeals 14 October 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Jennie Wilhelm Mau, for the State.*

*Paul Pooley for defendant-appellant.*

LEVINSON, Judge.

Defendant (Andy Shelton) appeals from judgments entered upon his convictions of seven counts of felony incest, two counts of first degree rape, and three counts of second degree rape. The evidence at trial is summarized in relevant part as follows: The defendant's daughter, K.,[1] testified that she was born in 1971 and that as a child she experienced severe beatings and "whippings" from her father. In 1981, when she was ten years old, the defendant told her that "he wanted to teach [her] what boys wanted" and engaged her in forcible sexual intercourse. For the following seven years, defendant forced K. to have intercourse about once a week. In October 1988 he forced her to have sex with him at gunpoint, resulting in her becoming pregnant with her daughter, M.L. K. also testified she never initiated sexual relations with her father, and never consented to sex with him.

---

1. To preserve their privacy, the names of the victims in this case, and of their children, are referred to by their initials.

K.'s sister, M.A., testified that she was born in 1969 and that the defendant is her father. The defendant beat her frequently when she was a child, leaving bruises and marks on her face. When M.A. was about fourteen years old, the defendant raped her after telling her that the "safest" way to have sex was "at home." Despite her refusal, defendant forced her to engage in sexual intercourse repeatedly over the next few years. In 1989 the defendant raped her and she became pregnant with her son A., who was born in 1990. M.A. testified that she never consented to sexual relations with the defendant.

Yancey County Deputy Sheriff Thomas Farmer testified to corroborative statements taken from K. and M.A., and to genetic testing confirming defendant's paternity of his daughters and of their children A. and M.L. He also testified concerning three statements he obtained from the defendant. In the first statement, taken in November 2002, the defendant told Farmer the following: He admitted having sexual relations with K. at least four times and with his third daughter, "M", at least once. However, he claimed that K. had initiated their sexual encounters, and denied forcing K. or pointing a gun at her. He also apologized for the "mistake" of having sex with his daughters. After his arrest in December 2002, defendant made a second statement, in which he claimed that K. initiated their sexual activity because she "wanted him" sexually, and that she "used sex to get her way." In February 2003 defendant made a third statement admitting to having sex with M.A. on one occasion and to fathering her child. Each of these statements was reduced to writing and signed by the defendant. The State also introduced a stipulation by the defendant admitting that he was the natural father of K. and M.A., and was also the father of their children A. and M.L.

Following the presentation of evidence, the jury convicted the defendant of all charges. He was sentenced to consecutive prison terms totaling 186½ years for the charges of second degree rape and incest, and to consecutive life sentences for the charges of first degree rape. From these judgments and convictions the defendant appeals.

[1] The defendant was convicted of four counts of incest with K. and three counts of incest with M.A. He argues first that the trial court erred by denying his motion to dismiss all but one incest charge per victim. He contends "that a pattern of recurrent incestuous behaviors constitutes one offense," and thus that he could not be convicted of two or more counts of incest with the same victim. We disagree.

"The crime of incest is purely statutory," *State v. Rogers*, 260 N.C. 406, 409, 133 S.E.2d 1, 3 (1963), and is defined by N.C.G.S. § 14-178 (2003), which provides in pertinent part that a "person commits the offense of incest if the person engages in carnal intercourse with the person's . . . child[.]" The statutory language does not reveal any legislative intent to prohibit prosecuting a defendant for more than one count of incest per victim. Thus, defendant's argument is not supported by the relevant statutory provisions.

Defendant asserts that incest is a continuing offense for which only a single prosecution is authorized. A continuing offense "is a breach of the criminal law not terminated by a single act or fact, but which subsists for a definite period and is intended to cover or apply to successive similar obligations or occurrences." *State v. Grady*, 136 N.C. App. 394, 399, 524 S.E.2d 75, 79 (2000) (because offense of maintaining dwelling for use of controlled substances is a continuing offense, convictions of two counts of the offense violated constitutional prohibition against double jeopardy) (citation omitted). We conclude that neither statutory provisions nor relevant case law suggests that incest is a continuing offense.

Defendant also argues that certain North Carolina appellate cases are properly interpreted as barring more than one conviction for incest between a defendant and a particular victim. He bases this argument upon language found in several older cases, including *State v. Vincent*, 278 N.C. 63, 64, 178 S.E.2d 608, 609 (1971), stating that a father "is guilty of the statutory felony of incest if he has sexual intercourse, either habitual or in a single instance, with a woman or girl whom he knows to be his daughter." Defendant would have us interpret the phrase "either habitual or in a single instance" as imposing a prohibition on prosecution of a defendant for more than one count of incest where there is evidence of "habitual" incest. However, neither *Vincent* nor the other cases cited by defendant draw such a conclusion. Indeed, the cases cited by defendant do not address the issue of multiple indictments.

Moreover, evidence presented in incest cases often shows a pattern of ongoing sexual relations over a period of time between a defendant and a single victim. In this factual context, our appellate courts have not hesitated to uphold multiple convictions of incest by a defendant committed against a given child. *See, e.g., State v. Weathers*, 322 N.C. 97, 366 S.E.2d 471 (1988) (defendant convicted of two counts of incest with his daughter); *State v. Etheridge*, 319 N.C. 34, 352 S.E.2d 673 (1987) (defendant convicted of four counts of

incest with his daughter occurring over a ten month period); *State v. Wade*, 155 N.C. App. 1, 5, 573 S.E.2d 643, 647 (2002) (defendant convicted of three counts of incest with his daughter that occurred when victim visited defendant "every weekend" between the ages of twelve and seventeen and had intercourse with defendant "every single time" she visited), *disc. review denied*, 357 N.C. 169, 581 S.E.2d 444 (2003).

This assignment of error is overruled.

---

[2] Defendant argues next that the trial court erred by accepting defendant's plea of guilty but then submitting these same counts to the jury for their determination of his guilt or innocence. We disagree.

The transcript indicates that at the start of trial the defendant informed the court, in the presence of the jury, that he wished to plead guilty to two counts of incest, and that the trial court noted this for the record. The defendant neither asked to execute a transcript of plea, nor requested the court to limit or exclude any evidence on the basis of his offer to plead guilty. During trial, all of the State's witnesses testified regarding the incidents that formed the basis of the charges to which defendant had offered to plead guilty. The defendant neither objected to the introduction of such evidence, nor asked the court to accept his plea of guilty at the close of the evidence. Moreover, the trial court informed the parties during the charge conference of its intention to instruct the jury that, although defendant had tendered a plea of guilty, the court was nonetheless submitting these charges to the jury for their determination. The defendant voiced no objections, either during the charge conference or when the trial court instructed the jury as follows:

> Now, members of the jury, you will recall that during or following the Court's opening instructions prior to the opening statements of the lawyers that the defendant stated that he was pleading guilty to two charges. These are Case Numbers 03 CRS 180 and 02 CRS 1192. However, during the arraignment the defendant pled not guilty to the said charges. Members of the jury, the Court is submitting to you these cases for your determination of the guilt or innocence of the defendant. It is your duty to find the facts in these cases as it is in all of the cases and to determine whether the defendant is guilty beyond a reasonable doubt in these two cases and in all of the cases.

The defendant never asked to execute a plea transcript, or otherwise followed up on his initial offer to plead guilty.

On this record, defendant asserts that he tendered pleas of guilty to two counts of incest, and that "[w]ithout engaging in the plea colloquies required by G.S. § 15A-1022 and 1026, the trial court accepted and recorded the plea." However, defendant's argument is premised upon a legal impossibility, because without engaging in the plea colloquies required by statute, the trial court cannot and does not accept an offered plea of guilty. *See State v. Glover*, 156 N.C. App. 139, 145-46, 575 S.E.2d 835, 839-40 (2003); *see also State v. Marlow*, 334 N.C. 273, 280-81, 432 S.E.2d 275, 279 (1993) (no "actual entry of the guilty plea" took place where "defendant tendered a guilty plea which was not accepted and approved by the trial judge"). We conclude that, notwithstanding defendant's offer to plead guilty, no plea was accepted or entered by the trial court.

Defendant also argues that the court erred by admitting evidence of the charges to which he had offered to plead guilty. By not objecting to such evidence, defendant failed to preserve this issue for appellate review. N.C. R. App. Proc. 10(b)(1) (2003) ("to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make"). Nor do we agree with defendant that the jury "was improperly privy to counsel's admission of his client's guilt." The record is clear that it was defendant who chose to proffer a plea of guilty in front of the jury.

We conclude that, notwithstanding defendant's strategic decision to admit his guilt of two of the charged offenses in the jury's presence, no plea of guilty was accepted or entered by the court. The charges were instead submitted for the jury's determination. Defendant's argument on this issue is rejected. However, we note that on the judgment forms for the two cases at issue, 02 CRS 1192 and 03 CRS 180, the box marked "pled guilty" is erroneously checked. Accordingly, we remand solely for correction of this clerical error.

[3] Defendant's next two arguments pertain to sentencing. He argues first that the trial court abused its discretion by failing to find as a mitigating factor that defendant voluntarily acknowledged wrongdoing prior to arrest and at an early stage of the criminal process. We disagree.

"Under the Fair Sentencing Act, 'the sentencing judge must find and weigh aggravating and mitigating factors before imposing a sen-

tence greater than the presumptive sentence set by the statute.' " *State v. Mickey*, 347 N.C. 508, 513, 495 S.E.2d 669, 672 (1998) (quoting *State v. Flowers*, 347 N.C. 1, 41, 489 S.E.2d 391, 414 (1997)). Under former N.C.G.S. § 15A-1340.4(a)(2)(l) (repealed effective 1 October 1994), one such statutory mitigating factor is that "prior to arrest or at an early stage of the criminal process, the defendant voluntarily acknowledged wrongdoing in connection with the offense to a law enforcement officer." The trial court errs by failing to find this mitigating factor when the defendant has made a full confession to the charged offense before arrest. *State v. Daniel*, 319 N.C. 308, 354 S.E.2d 216 (1987). "A defendant 'acknowledges wrongdoing' when he admits 'culpability, responsibility or remorse, as well as guilt.' " *State v. Godley*, 140 N.C. App. 15, 28, 535 S.E.2d 566, 575 (2000) (quoting *State v. Rathbone*, 78 N.C. App. 58, 67, 336 S.E.2d 702, 707 (1985)). Thus, where defendant admits committing certain acts, but does not acknowledge wrongdoing or culpability, the trial court does not err by failing to find this mitigating factor. *See, e.g., State v. Clark*, 314 N.C. 638, 643, 336 S.E.2d 83, 86 (1985) (defendant not entitled to finding in mitigation where he admitted that "he killed the victim but denied culpability by contending that the shooting was justified by self-defense"); *State v. Michael*, 311 N.C. 214, 316 S.E.2d 276 (1984) (defendant does not admit wrongdoing where he admits killing victim but contends it was accidental).

"Under the Fair Sentencing Act, a trial court must find a statutory mitigating factor if that factor is supported by uncontradicted, substantial, and manifestly credible evidence. In order to show that the trial court erred in failing to find a mitigating factor, the defendant has the burden of showing that no other reasonable inferences can be drawn from the evidence." *State v. Brewington*, 343 N.C. 448, 456-57, 471 S.E.2d 398, 403 (1996) (citing *State v. Jones*, 309 N.C. 214, 218-20, 306 S.E.2d 451, 454-55 (1983)).

Defendant first argues that the record "shows that the defendant specifically requested the trial court to find this mitigating factor." Defendant misstates the record in this regard. In fact, the record shows only one oblique reference to this issue:

DEFENSE COUNSEL: So I'd offer to you as a mitigating factor, Your Honor, that his mental abilities are diminished. I think that's 4B on the list of factors. That **he admitted some of this and was candid with Officer Farmer** as Lieutenant Farmer said; that he's got a support system here in the community.

We do not agree that counsel's statement to the court that defendant "admitted some of this" constitutes a request for the court to find the statutory mitigating factor at issue. However, even construing defendant's statements at sentencing as a request for the trial court to find the mitigating factor, we conclude that the trial court did not err by failing to do so.

In his statements to Officer Farmer, the defendant conceded that he had engaged in several acts of intercourse with his daughters. However, the defendant admitted to only a few of the numerous incidents to which the victims testified, and he never acknowledged forcing or pressuring them to engage in sexual activities. In his first statement he admitted having sex with a third daughter and with K. on four occasions, although insisting that the sexual activity was "agreed on between [them]." In his second statement, defendant denied having intercourse with K. when she was ten years old, as she testified. He also claimed K. had "wanted him" sexually, and had enticed him by wearing "mini skirts [and] small shirts." He stated that K. "causes problems for everyone," and that she "initiated the sexual intercourse between the two of them." He also claimed that he could not understand why charges were being brought against him. Further, he did not admit to any acts of intercourse with M.A. until his third statement, after being confronted by DNA evidence proving that he had fathered her child. In that statement defendant explained having intercourse with M.A. partly on the basis that his wife "was going thorough the change of life and she and I were not having sex very often" and also that on the one occasion he acknowledged having sex with M.A. she had been "wearing tight jeans." Finally, defendant never acknowledged the pain and suffering he caused his victims; the closest he came to admitting any wrongdoing was a grudging acknowledgment in his first statement that having sex with his daughters had been a "mistake."

We conclude the trial court did not abuse its discretion by failing to find this mitigating factor. Although defendant made certain statements to Officer Farmer, his statements did not prove by a preponderance of uncontradicted and manifestly credible evidence that "prior to arrest or at an early stage of the criminal process, the defendant voluntarily acknowledged wrongdoing in connection with the offense to a law enforcement officer." *See State v. Brewington*, 343 N.C. 448, 457-58, 471 S.E.2d 398, 404 (1996) (trial court did not err by failing to find early acknowledgment of wrongdoing where defendant "trie[d] to minimize his culpability" and had "attempt[ed] to shift

responsibility" for the commission of the offense at issue). This assignment of error is overruled.

[4] Defendant also argues that the trial court recommended an amount of restitution that was not supported by competent evidence. We agree.

Evidence was adduced at trial that during its investigation of these offenses the State secured nontestimonial identification orders. These were used to obtain the genetic DNA testing that established that defendant was, to an overwhelming degree of certainty, the father of his daughters K. and M.A., and of their children A. and M.L. During sentencing, the State asked that in the event defendant was granted work release he be required to reimburse the $2,250.00 expense for genetic testing. The issue was addressed in the judgment for Case Number 02 CRS 1197, in which the defendant was sentenced to life in prison for the offense of first degree rape. On the judgment for this offense, the court ordered that if defendant were ever paroled he be required to pay restitution of $2,250.00. Restitution was not ordered in any of the other judgments.

Preliminarily, we reject the State's argument that defendant has not properly preserved this issue for appellate review. While defendant did not specifically object to the trial court's entry of an award of restitution, this issue is deemed preserved for appellate review under N.C. Gen. Stat. § 15A-1446(d)(18). *State v. Reynolds*, 161 N.C. App. 144, 149, 587 S.E.2d 456, 460 (2003).

"[T]he amount of restitution recommended by the trial court must be supported by evidence adduced at trial or at sentencing." *State v. Wilson*, 340 N.C. 720, 726, 459 S.E.2d 192, 196 (1995) (citing *State v. Daye*, 78 N.C. App. 753, 756, 338 S.E.2d 557, 560 (1986)). The unsworn statement of the prosecutor is insufficient to support the amount of restitution ordered. *State v. Buchanan*, 108 N.C. App. 338, 423 S.E.2d 819 (1992). In the instant case, the record does not include any evidence supporting the prosecutor's statement during sentencing as to the amount charged for the genetic testing. Consequently, this portion of the judgment in Case Number 02 CRS 1197 is vacated.

We have considered defendant's other assignments of error and find them to be without merit. In summary, we find no error in defendant's convictions and sentences with the exception of the restitution recommended in 02 CRS 1197. Additionally, we remand for the limited purpose of allowing the trial court, in the absence of the

defendant, to make a clerical correction in the judgment forms for 02 CRS 1192 and 03 CRS 180 to reflect that defendant was found guilty by a jury.

No error in part, remanded in part, vacated in part.

Judges TYSON and BRYANT concur.