IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-715

Filed 07 March 2023

Henderson County, No. 18CRS051036

STATE OF NORTH CAROLINA

v.

BOEVINO ANTWANE HAMMOND, Defendant.

Appeal by Defendant from Judgment entered 16 March 2022 by Judge William H. Coward in Henderson County Superior Court. Heard in the Court of Appeals 24 January 2023.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General John A. Payne, for the State.*
>
> *Mary McCullers Reece for Defendant-Appellant.*

RIGGS, Judge.

Defendant Boevino Antwane Hammond appeals from a judgment entered after a jury found him guilty on one count of trafficking opium or heroin, *i.e.,* fentanyl. At trial, Mr. Hammond requested—but was denied—an instruction that the jury must find he "knew that what [he] possessed was fentanyl" in order to convict him of the crime charged. Mr. Hammond renews this argument by direct appeal and petition for writ of *certiorari*, contending the trial court prejudicially erred in declining to give the requested instruction. After careful review, we grant *certiorari* review in our discretion and hold that that Mr. Hammond has failed to show error on the merits of

his appeal.

## I.    FACTUAL AND PROCEDURAL HISTORY

On 15 March 2018, the Henderson County Sheriff's Office SWAT team executed a search warrant at a home near Fletcher, North Carolina, in an attempt to locate and arrest Mr. Hammond on several outstanding arrest warrants. Officers immediately located Mr. Hammond upon entry into the home and placed him under arrest without incident. Mr. Hammond did not speak to police in exercise of his Fifth Amendment rights.

One of the arresting officers, James Hurn, smelled marijuana and heard a toilet running somewhere in the house. Officer Hurn informed his supervisor of his findings, who in turn pursued and obtained a warrant to search the home for drugs later that day.

Following issuance of the new search warrant, Officer Hurn began looking through the primary bedroom for contraband. He started his search by looking through a laundry hamper, which contained a black plastic bag with a solid white substance inside. Believing the substance to be cocaine, Officer Hurn had the substance photographed, catalogued, and field tested. That test returned a positive result for suspected cocaine. Officer Hurn then found suspected drug paraphernalia elsewhere in the bedroom, including a Magic Bullet blender, inositol, and scales.

Officer Hurn also searched the home's bathroom, locating a powdered substance caked around the toilet bowl. This, too, tested positive for suspected

cocaine on a field test. Another officer, Michael Gehring, then collected the substance for testing at the State Crime Lab.

The homeowner returned to the property later that afternoon while the search was still underway. Police placed her under arrest for possession of trafficking amounts of cocaine based on the belief that the substance found in her home was cocaine. Subsequent but pre-indictment testing at the State Crime Lab in late 2018 revealed that the white powder from the hamper and toilet bowl was actually fentanyl.

A grand jury indicted Mr. Hammond on 7 January 2019 for trafficking opium or heroin by possession. Trial began on 14 March 2022, with Officer Hurn, Officer Gehring, and other members of law enforcement testifying consistent with the above recitation of the facts. On cross-examination, Officer Gehring explained why police charged the homeowner with possession of cocaine and not fentanyl:

> [OFFICER GEHRING]: There's a lot of different reasons why we decided to charge with possession of cocaine instead of fentanyl. . . . I've come across cocaine multiple times, whether it be user amounts or large quantities— amounts up in Asheville, as well as Henderson County itself. . . . [O]nce I came back down to Henderson County, the white powder that we ever really came across was cocaine. And that was based upon State Lab results, as well as actual individuals telling us, yes, that's cocaine. . . .
>
> . . . .
>
> And like I stated yesterday, we actually came into contact with an individual who was in the process of trying to dye his cocaine red because people were so scared of fentanyl

at that time in Henderson County.

. . . .

So all of that combined with now I have a white powder substance in large quantities, like I've seen multiple times before. I've not seen or heard of fentanyl in Henderson County. None of our informants have talked about fentanyl in Henderson County whatever. Have talked about cocaine multiple times in Henderson County, white powder, white powder. What's more prevalent in the area? What have we seen? What have we heard from informants? Based upon all that information, I have to go based off of what I feel is cocaine at that time.

[DEFENDANT'S COUNSEL]: And it tested positive for cocaine?

[OFFICER GEHRING]: It did. Yes, sir.

[DEFENDANT'S COUNSEL]: Okay. And so on the date of offence, March 15, 2018, at the end of that day everyone thinks it's cocaine?

[OFFICER GEHRING]: Yes, sir. Very good reasonable belief. Yes, sir.

Following the close of the State's evidence, Mr. Hammond informed the trial court that he did not intend to testify and rested without presenting any evidence. The trial court then held the charge conference, during which Mr. Hammond's counsel made the following request:

[I]n foot note number 2, that is in 260.10, Possession, it says: If the defendant contends that the defendant did not know the true identity of what the defendant possessed, add this language to the first sentence, . . . ["]and the defendant knew that what the defendant possessed was . . . fentanyl.["]

> I certainly think there is evidence in this case from every witness that has taken the stand that the identity of the substance is in question, since it was field tested and believed to be cocaine and charged as cocaine at the beginning. And so we are requesting as part of the possession instruction to inform the jury that they have to find that [Mr. Hammond] knew that he possessed fentanyl.

The trial court denied the requested instruction, reasoning that law enforcement's initial misapprehension of the substance's identity had no bearing on Mr. Hammond's knowledge, and "[t]here was no evidence in this case that the defendant did not know [the substance was fentanyl]. He didn't testify."

Closing arguments were given but not transcribed and, after instruction and deliberation, the jury returned a guilty verdict. The trial court proceeded to sentence Mr. Hammond to 225 to 282 months imprisonment. A written judgment was entered on 16 March 2022, which states that Mr. Hammond gave notice of appeal from the judgment even though no such notice appears in the trial transcript.

Mr. Hammond filed a *pro se* written notice of appeal on 21 March 2022. Though timely, the notice does not identify the judgment appealed or the court to which the appeal is taken as required by N.C. R. App. P. 4(b) (2022). Nor does the notice indicate service on the State as required by N.C. R. App. P. 4(a)(2) (2022). The trial court nonetheless entered appellate entries on 25 March 2022, and Mr. Hammond's counsel filed a petition for writ of *certiorari* with this Court on 27 September 2022.

## II. ANALYSIS

### A. Appellate Jurisdiction and Petition for Writ of *Certiorari*

Mr. Hammond concedes that his written notice of appeal does not comply with the requirements of N.C. R. App. P. 4(a)(2) and (b). He also argues, however, that these defects do not divest this Court of jurisdiction; indeed, this Court has noted that failure to serve the State and identify the court to which the appeal is taken "are not the sorts of defects requiring dismissal of an appeal on a jurisdictional basis." *State v. Baungartner*, 273 N.C. App. 580, 583, 850 S.E.2d 549, 551 (2020) (citation omitted). We have also granted *certiorari* review in similar circumstances where, as here, the State lodges no substantive argument against such review. *Id.*; *see also State v. Thorne*, 279 N.C. App. 655, 659, 865 S.E.2d 768, 771 (2021) (granting *certiorari* review when the defendant's *pro se* written notice of appeal was not served on the State and failed to designate the court to which the appeal was taken). Assuming, *arguendo*, that Mr. Hammond's *pro se* notice of appeal raises jurisdictional concerns, we allow his petition for writ of *certiorari* in our discretion to reach the merits of his appeal.

## B. Standard of Review

We review a preserved challenge to jury instructions *de novo*. *State v. Richardson*, 270 N.C. App. 149, 152, 838 S.E.2d 470, 473 (2020). A trial court must give the requested instruction if it is supported by the evidence when taken in the light most favorable to the defendant. *State v. Mercer*, 373 N.C. 459, 462, 838 S.E.2d 359, 362 (2020). To prevail on appeal, a defendant must demonstrate both error and a "reasonable possibility" that the jury would have reached a different result had the

requested instruction been given. *State v. Brewington*, 343 N.C. 448, 454, 471 S.E.2d 398, 402 (1996).

## C. The Trial Court Did Not Err

Mr. Hammond's requested instruction is appropriately given only "when the defendant denies having knowledge of the controlled substance that he has been charged with possessing or transporting, [as] the existence of the requisite guilty knowledge becomes 'a determinative issue of fact' about which the trial court must instruct the jury." *State v. Galaviz-Torres*, 368 N.C. 44, 49, 772 S.E.2d 434, 437 (2015). Stated differently, "when the defendant introduces evidence of lack of guilty knowledge the court must charge on it." *State v. Nobles*, 329 N.C. 239, 244, 404 S.E.2d 668, 671 (1991). *See also State v. Elliott*, 232 N.C. 377, 379, 61 S.E.2d 93, 95 (1950) (holding a guilty knowledge instruction is required when a defendant "specifically pleas want of knowledge . . . and offer[s] evidence in support of that plea.").

Mr. Hammond argues that the arresting and investigating officers' misapprehension of the substance found in the home amounts to evidence that Mr. Hammond did not know he was in possession of fentanyl. Specifically, he seizes on the following exchange in arguing the requested instruction should have been given:

> [DEFENDANT'S COUNSEL]: Okay. And so on the date of offence, March 15, 2018, at the end of that day *everyone* thinks it's cocaine?
>
> [OFFICER GEHRING]: Yes, sir. Very good reasonable belief. Yes, sir.

(Emphasis added). Mr. Hammond posits that because Officer Gehring did not expressly limit his testimony that "everyone" believes the substance was cocaine to the arresting and investigating officers, the jury should have been given the opportunity to resolve whether Mr. Hammond lacked knowledge of the substance's true identity upon proper instruction.

Mr. Hammond's argument fails for the simple reason that there is no ambiguity in Officer Gehring's testimony suggesting that Mr. Hammond believed the fentanyl to be cocaine. Read in context, it is apparent that Officer Gehring was referring to the knowledge of the officers who initially arrested Mr. Hammond and the homeowner for possession of cocaine, as the excerpted testimony immediately follows a lengthy discussion of their rationale for doing so. Nothing else in the record supports a reading to the contrary; Mr. Hammond did not testify, and the officers who did—including Officer Gehring—were clear that Mr. Hammond refused to speak with them consistent with his right to remain silent. No written statements to police or physical evidence otherwise suggests that Mr. Hammond lacked the requisite guilty knowledge in this case; to the contrary, officers testified that the inositol recovered at the scene is "a commonly used cutting agent for fentanyl." Without testimony or other evidence suggesting that Officer Gehring had any indication as to Mr. Hammond's knowledge, Mr. Hammond's preferred reading of Officer Gehring's testimony lacks any support in the record.

This absence of any evidence as to Mr. Hammond's lack of knowledge of the

substance's identity renders it meaningfully distinct from the central case on which Mr. Hammond relies. In that decision, *State v. Coleman*, we held that a defendant was erroneously denied the requested guilty knowledge instruction, but only because there was "substantive evidence" admitted at trial demonstrating he "did not know the true identity of what he possessed." 227 N.C. App. 354, 359, 742 S.E.2d 346, 350 (2013). As previously explained, no such evidence was admitted in this case.

Without evidence of Mr. Hammond's lack of knowledge, the trial court was not required to give the requested instruction because "[a] presumption that the defendant has the required guilty knowledge exists in the event that the State makes a prima facie showing that the defendant has committed a crime, such as trafficking by possession, . . . that lacks a specific intent element." *Galaviz-Torres*, 368 N.C. at 48, 772 S.E.2d at 437. *See also State v. Parker*, 277 N.C. App. 531, 860 S.E.2d 21, 36 (2021) (holding a defendant was not entitled to receive a guilty knowledge instruction because it was not supported by the evidence); *State v. Bagley*, 183 N.C. App. 514, 524, 644 S.E.2d 615, 622 (2007) ("Jury instructions must be supported by the evidence. Conversely, all essential issues arising from the evidence require jury instruction." (citations omitted)). We therefore hold Mr. Hammond has failed to demonstrate error under this argument.

### III.   CONCLUSION

Mr. Hammond's argument rests on the assertion that Officer Gehring's testimony created an issue of fact as to Mr. Hammond's guilty knowledge. But Mr.

Hammond's reading of that testimony is not supported by the record, and no other evidence demonstrates a lack of guilty knowledge on Mr. Hammond's part. Under such a circumstance, the trial court was not required to give a specific instruction on guilty knowledge. Thus, while we allow Mr. Hammond's petition for writ of *certiorari* to reach his appeal on the merits, we ultimately hold that he has failed to demonstrate error below.

NO ERROR.

Judges GORE and STADING concur.